```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
THERESA BUCCILLI and PANAGIOTA
MATRAKAS, individually and on
behalf of all others similarly situated,

                Plaintiffs,
        -v-                                                   Case No. 17-cv-7498 (SFJ)(AYS)
                                                              **Memorandum and Order**
FOSTER & GARBUS, LLP,
                Defendant.
-------------------------------------------------------X
FEUERSTEIN, S.J., Senior District Judge:
```

I.      Introduction

Plaintiffs Theresa Buccilli ("Bucilli") and Panagiota Matrakas ("Matrakas"; together with Buccilli, the "Plaintiffs") bring this putative class action against Defendant Foster & Garbus, LLP ("Defendant" or "F&G") under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq* (the "FDCPA"). (*See* Complaint, ECF No. 1 (hereafter, "Complaint").) Pursuant to Federal Rule of Civil Procedure 56, Defendant seeks summary judgment in its favor. (*See* ECF No. 15 (hereafter, "Summary Judgment Motion"); *see also* ECF No. 16 (Memorandum in Support of Summary Judgment Motion; hereafter "Support Memo").) Plaintiffs oppose the Motion (*see* ECF No. 18 (hereafter, "Opposition" or "Opp'n").) For the reasons that follow the Motion is GRANTED.

II. Background

　　A. *Factual Background*[1]

Plaintiffs are individuals residing in Suffolk County, New York (*see* 56.1 Counter, ¶¶10-11 (citing Compl., ¶¶5-6)), and are consumers as defined under the FDCPA (*id.* at ¶12 (citing Compl. ¶7)). Defendant is a debt collector as defined under the FDCPA (*see id.* at ¶14; *see also* Compl, ¶10) that alleges the Plaintiffs each owe a debt (*see id.* at ¶14; *see also* Compl, ¶11), *i.e.*, Buccilli owes three thousand, one hundred sixty-eight dollars and sixty cents ($3,168.60) (hereafter, the "Buccilli Debt")(*see id.* at ¶4; *see also* Compl, ¶21), and Matrakas owes eight hundred ten dollars and forty-one cents ($810.41) (hereafter, the "Matrakas Debt" (*see id.* at ¶3[2]; *see also* Compl., ¶22); together with the Buccilli Debt, the "Debts"). The Debts were primarily for personal, family or household purposes and are, therefore, "debts" as that term is defined under the FDCPA. (*See id.* at ¶16; *see also* Compl., ¶12.)

In an effort to collect the Buccilli Debt, the Defendant sent Buccilli a dunning letter dated December 23, 2016 (hereafter, the "Buccilli Letter"). (*See id.* at ¶6; *see also* Compl., ¶15 (citing Ex. 1 (ECF No. 1-1 at pp.1-2), *attached to* Complaint). Similarly, Defendant sent Matrakas a dunning letter dated December 24, 2016 to collect the Matrakas Debt (hereafter, the "Matrakas Letter"). (*See id.* at ¶5; *see also* Compl., ¶16 (citing Ex. 1 (ECF No. 1-1 at pp.3-4), *attached to*

---

[1] The facts are taken from Defendant's Rule 56. 1 Statement (hereafter, "56.1 Statement") (*see* ECF No. 17), and Plaintiffs' Rule 56.1 Counterstatement (hereafter, "56.1 Counter") (*see* ECF No. 18-1). Unless otherwise stated, a standalone citation to a Rule 56.1 Statement denotes that either the parties have, or the Court has, determined the underlying factual allegation to be undisputed.

[2] Plaintiffs dispute that they are currently indebted to the underlying creditor, TD Bank USA, N.A. (hereafter, "TDB") as each filed for bankruptcy relief and were granted discharges of their debt obligations to TDB. (*See* 56.1 Counter, ¶2.) For purposes of the present action, however, that is not a material dispute and, as more fully discussed herein, does not preclude the granting of Defendant's Summary Judgment Motion.

Complaint.)  (Hereafter, the Buccilli Letter and the Matrakas Letter will collectively be referred to as the "Collection Letters".)

While not disputing that the Collection Letters each contained language advising the Plaintiffs, "[d]epending on your account agreement with the creditor, interest, late charges and other charges may continue to accrue on your account" (*id.* at 8), Plaintiffs dispute that the Letters stated that the respective balances were "increasing on a daily basis due to accruing interest."  (*Id.* at ¶7.)  Indeed, Plaintiffs allege the Collection Letters fail to, *inter alia*:  provide the least sophisticated consumer ("LSC") with information allowing the LSC "to determine what he or she will need to pay to resolve the debts at any given moment in the future" (Compl., ¶25); provide information necessary for an LSC "to determine the amount of interest owed" (*id.* at ¶26); and, "state that the creditor will accept payment of the amount set forth in full satisfaction of the debt if payment is made by a specified date" (*id.* at ¶35).  According to the Plaintiffs, these failures render the LSC unable to determine:  the minimum amounts owed as of the Collection Letters' dates (*see id.* at ¶36); what needs to be paid "to resolve the debts at any given time in the future" (*id.* at ¶37); and "the amount of his or her debt" (*id.* at ¶ 38), especially "because the consumer would not know whether interest and fees would continue to accrue, or whether the amount of the debt was static."  (*Id.* at ¶39.)  Hence, from the perspective of the LSC, the Collection Letters did not convey the amount of the debt "clearly", "accurately", or "without ambiguity" (*id.* at ¶¶40-42) and, as a result, violate §§ 1692e and 1692g of the FDCPA.  (*See* Compl, ¶43 (citing *Balke v. Alliance One Receivables Mgmt, Inc.*, No. 16-cv-5624 (ADS)(AKT), 2017 WL 2634653 (E.D.N.Y. June 19, 2017)).)  Plaintiffs did not allege that the Defendant was not authorized to collect interest or late or other charges (*see* Compl, *in toto*), but did admit that Defendant was retained by TDB "to collect debts owed by each Plaintiff to TDB."  (56.1 Counter, ¶1.)

## B. Procedural Background

On December 26, 2017, Plaintiffs commenced this putative class action FDCPA case against Defendant. After providing a proverbial laundry list of how the Collection Letters fail in some fashion, *see supra* at 3, *see also, e.g.*, Compl, ¶26 (fails to provide information to determine interest owed), ¶¶ 27-29 (same); ¶30 (fails to explain fees and interest that may cause stated balance to increase); ¶¶31-34 (same), at the end of their "Allegations", the Plaintiffs generally claim violations of §1692e and §1692g. (*See id.* at ¶43.) On January 23, 2018, Defendant answered Plaintiffs' Complaint: denying the majority of the alleged failures of the Collection Letters (*see* Answer (ECF No. 5), ¶¶24-30, 35-43); but admitting that they did not state what portions of the respective Full Balances were attributable to principal, interest, late fees or other fees (*see id.* at ¶¶31-34); and denying Plaintiffs' Class Allegations (*see id.* at ¶¶44-45, 47-50). On August 20, 2018, Defendant moved for summary judgment, which Plaintiffs opposed.

## C. The Parties' Positions

Relying upon *Avila v. Riexinger & Associates*, 817 F.3d 72 (2d Cir. 2016), the Defendant included safe-harbor language in its Collection Letters. Acknowledging that the Collection Letters "do not set forth the exact 'safe-harbor' language set forth in *Avila*," the Defendant, nonetheless, contends that "the language used is an adequate disclaimer to place the least sophisticated consumer on notice that the total balance in the letter may be increasing daily." (Supp. Memo at 6.) Such substantial compliance, therefore, is sufficient to avoid violating the FDCPA. (*See, e.g., id.* at 9.) Moreover, the Defendant argues that Plaintiffs' reliance on *Balke*, 2017 WL 2634653, is misplaced as that case incorrectly interpreted the subsequent Second Circuit case, *Carlin v. Davidson Fink, LLP*, 852 F.3d 207 (2d Cir. 2017), which did not involve

*Avila* safe-harbor language, but, rather, estimated totals not yet due. (*See* Supp. Memo at 6-8). Hence, the Defendant encourages the Court to follow Judge Ross's decision in *Taubenfliegel v. EGS Fin. Care, Inc.*, No. 18-CV-1962-ARR-JO, 2018 WL 3079697, at *4 (E.D.N.Y. June 21, 2018), which harmonized *Carlin* with *Avila* (*see* Supp. Memo at 8) by concluding that *Carlin* "elaborated on the requirements of the FDCPA in situations not addressed by *Avila*, [but has] not changed *Avila*'s core holding—that a debt collector may comply with the FDCPA by following the formula of the safe-harbor language". *Taubenfliegel*, 2018 WL 3079697, at *4. Relying on the Affidavit of TBD employee Linda Palma, previously filed in this case (*see* ECF No. 10-1), the Defendant puts forth that there are no genuinely disputed factual issues precluding the granting of summary judgment in their favor. (*See* Supp. Memo at 10.)

Plaintiffs oppose the Summary Judgment Motion for two reasons: their reliance upon *Carlin*, which they argue supports their position that more than the *Avila* safe harbor language is needed to properly communicate the "amount of the debt" for purposes of satisfying § 1692g (*see* Opp'n at 1); and their contention that there are questions of fact precluding granting summary judgment in Defendant's favor, *i.e.*, whether the Plaintiffs' balances are subject to assessment of fees and/or other charges in addition to interest, and whether the Defendant had the authority to collect interest, fees and/or other charges. (*See id.* at 2; *see also id.* at 5-6, 9-10.)

III. <u>Discussion</u>

*A. Standard of Review of a Summary Judgment Motion*

Pursuant to Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015); *Kwong v. Bloomberg*, 723 F.3d 160, 164-65 (2d Cir. 2013); *Viola v. Philips Med. SYS. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994) (holding summary judgment

appropriate only where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the nonmovant, that no rational jury could find in the nonmovant's favor. *See Chertkova v. Conn. Gen'l Life Ins., Co.*, 92 F.3d 81, 86 (2d Cir. 1996). Although the evidence is viewed in favor of the non-moving party, *see Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "the mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the [fact-finder] could reasonably find for the [non-movanat]." *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005)(internal alterations and quotation marks omitted). It is insufficient to "rely on conclusory allegations or unsubstantiated speculation" to defeat a summary judgment motion. *Id.* (Internal quotation marks omitted). Instead, when the moving party has documented particular facts in the record, "the opposing party 'must set forth specific facts showing that there is a genuine issue for trial,'" *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986)(quoting Fed. R. Civ. P. 56(e)), which requires going beyond the allegations of the pleadings. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted).

    B. The FDCPA

        1. <u>Generally</u>

Congress enacted the FDCPA "with the aim of eliminating abusive practices in the debt collection industry, and also sought to ensure that 'those debt collectors who refrain from using abusive debt collection practices are not completely disadvantaged." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008) (quoting 15 U.S.C. § 1692(e)). The statute should be construed liberally. *See Katz v. Sharinn & Lipshie*, PC, 12-cv-2440, 2013 WL

4883474, *1 (E.D.N.Y. Sept. 11, 2013)(collecting cases); *see also McStay v. I.C. Sys., Inc.*, 308 F.3d 188, 191 (2d Cir. 2002) (instructing that debt collection letters are to be analyzed as a whole). To establish a violation of the FDCPA, a plaintiff must establish that: "(1) the plaintiff is a consumer within the meaning of the [A]ct; (2) the defendant is a debt collector; and (3) the defendant must have engaged in conduct in violation of the statute." *Coburn v. P.N. Fin'l*, No. 13-cv-1006, 2015 WL 520346, *3 (E.D.N.Y. Feb. 9, 2015) (internal quotation marks and citation omitted). The FDCPA "is a strict liability statute and a single violation is sufficient to establish liability." *Gonzalez v. Healthcare Recovery Mgmt., Inc.*, No. 13-cv-1002, 2013 WL 4851709, *2 (E.D.N.Y. Sept. 10, 2013); *see also Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 133-35 (2d Cir. 2010).

### 2. § 1692e

Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt" and sets forth a nonexhaustive list of prohibited conduct. 15 U.S.C. § 1692e; *see also Kolbasyuk v. Capital Mgmt. Servs., LP*, No. 17-cv-7499, 2018 WL 1785489, at *1 (E.D.N.Y. Apr. 14, 2018)("§ 1692e operates as a 'backstop' . . .ensur[ing] that a collection notice is not misleading" (citing *Avila*, 817 F.3d at 76)). Indeed, "a debt collection practice can be a 'false, deceptive, or misleading' practice in violation of § 1692e even if it does not fall within any of the subsections of § 1692e." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993) ("[I]t should be emphasized that the use of *any* false, deceptive, or misleading representation in a collection letter violates § 1692e– regardless of whether the representation in question violates a particular subsection of that provision." (Emphasis in original)). "A collection notice is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996).

3. § 1692g

Section 1692g requires that "within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing . . . the *amount of the debt*." 15 U.S.C. § 1692g(a)(1) (emphasis added). That section lists the "minimum disclosures required in an initial communication," disclosures that must also comply with § 1692e. *Kolbasyuk,* 2018 WL 1785489, at *2. "In other words, although § 1692g obligates a debt collector to disclose the amount of debt owed, the debt collector's recital of that amount must also satisfy § 1692e's requirement to not be misleading by, for instance, omitting accruing fees and interest." *Id.* ("The two sections have different aims, and compliance with Section 1692g does not guarantee compliance with Section 1692e, which always applies in connection with the collection of any debt by a debt collector.").

4. The "Least Sophisticated Consumer" Standard

In analyzing whether a communication violates the FDCPA, "courts apply an objective standard based on the 'least sophisticated consumer.'" *Dewees v. Legal Servicing, LLC*, 506 F. Supp.2d 128, 132 (E.D.N.Y. 2007) (quoting *Clomon*, 988 F.2d at 1318). The "least sophisticated consumer" standard is "measured by how the 'least sophisticated consumer' would interpret the notice received from the debt collector." *DeSantis v. Comp. Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001) (quoting *Russell*, 74 F.3d at 34). Therefore, courts "must analyze 'collection letters from the perspective of a debtor who is uninformed, naïve, or trusting, but is making basic, reasonable and logical deductions and inferences.'" *Dewees*, 506 F. Supp.2d at 132 (quoting *Spira v. Ashwood Fin., Inc.*, 358 F. Supp.2d 150, 156 (E.D.N.Y. 2005)). Ultimately, whether a communication violates the FDCPA depends upon "whether the notice fails to convey the

required information clearly and effectively and thereby makes the least sophisticated consumer uncertain as to the meaning of the message." *Weiss v. Zwicker & Assocs., P.C.*, 664 F. Supp.2d 214, 216 (E.D.N.Y. 2009) (internal quotation omitted). Thus, a collection letter may violate the FDCPA if it "could mislead a putative-debtor as to the nature and legal status of the underlying debt, or that could impede a consumer's ability to respond to or dispute collection." *Gabriele v. Am. Home Mortg. Serving, Inc.*, 503 F. App'x 89, 94 (2d Cir. 2012) (including communications which are "contradictory, vague or threatening" as possibly violating the FDCPA). "[B]ecause the least sophisticated consumer standard is objective, the determination of how the least sophisticated consumer would view language in a defendant's collection letter is a question of law." *Quinteros v. MBI Assocs., Inc.*, 999 F. Supp.2d 434, 437 (E.D.N.Y. 2014)(quoting *Castro v. Green Tree Serv'g LLC*, 959 F. Supp.2d 698, 707 (S.D.N.Y. 2013)); *see also Datiz v. Int'l Recovery Assocs., Inc.*, No. 15-cv-3549, 2018 WL 3751920, at *7 (E.D.N.Y. July 28, 2018) (same; collecting cases), *R&R adopted*, 2018 WL 4561461 (E.D.N.Y. Sept. 24, 2018); *DeLeon v. Action Collection Agent of Boston*, No. 17-cv-8899, 2018 WL 2089343, at *2 (S.D.N.Y. May 3, 2018)("In the Second Circuit, the least sophisticated consumer standard may be applied as a matter of law and thus is an appropriate issue for disposition on a motion for summary judgment." (further citation omitted)).

C. *The Present Case*

1. <u>The Palma Affidavit</u>[3]

In support of its Summary Judgment Motion, the Defendant submitted the Affidavit of Linda Palma, a Senior Agency Relations BP of the underlying creditor, TDB.[4]  Plaintiffs argue that the Palma Affidavit "serves to establish only one thing—that is that Plaintiffs' respective balances were purportedly increasing on a daily basis due to accruing interest." (Opp'n at 9; *see also* Palma Aff., ¶6.)  They contend that "[t]he Palma Affidavit says nothing about late charges and other charges, nor does it state what the terms of [TDB]'s retention of [Defendant] purportedly were." (*Id.*)  Plaintiffs ignore Palma's preceding sworn statement that "The Defendant [] is retained by [TDB] to collect consumer *debts* based upon account balances accrued in conjunction with Target Credit Cards." (Palma Aff, ¶3 (emphasis added).)  "Debt" includes "*any* obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . ," FDCPA § 1692a(5) (defining "debt"), which would encompass related interest, late charges and other charges.  In any event, the Plaintiffs did not put forth any allegations that the Defendant was not properly retained to collect interest or late or other charges in support of their claims of §§1692e and 1692g violations.  (*See* Compl., *in toto*.)  Their attempt to do so in their Opposition is without consequence. *See, e.g.. Mosby v. Bd. of Educ City of Norwalk*, 2018 WL 5733690, at *2, – F. App'x – (2d Cir. 2018) (claims not raised in complaint properly not considered in opposition papers); *Guo v. IBM 401(k) Plus Plan*, 95 F.

---

[3] For clarity, the Court notes that it has not considered the Liederman Affidavit which the Defendant submitted in support of its Reply (*see* ECF 19-1 (Liederman Aff.)), and which Plaintiffs moved to strike (*see* ECF No. 20).

[4] Notwithstanding, their protestations to the contrary (*see* Opp'n at 9 ("Ms. Palma offers no explanations as to what the title of "SR. Agency Relations BP" means . . .")), the Court does not find the lack of further explanation of Ms. Palma position with TDB to be a material disputed fact which should preclude the granting of summary judgment.

Supp.3d 512, 526-27 (complaint cannot be amended by raising new facts and theories in a plaintiff's opposition papers). Moreover, as will be elaborated, *infra*, the lack of reference to late charges and other charges in the Palma Affidavit does not create a disputed issue of fact precluding granting summary judgment.

2. Plaintiffs' § 1692e Claims

In *Avila*, the Second Circuit stated, *inter alia*:

> We hold that a debt collector will not be subject to liability under Section 1692e for failing to disclose that the consumer's balance may increase due to interest and fees if the collection notice either accurately informs the consumer that the amount of the debt stated in the letter will increase over time, or clearly states that the holder of the debt will accept payment of the amount set forth in full satisfaction of the debt if payment is made by a specified date.

817 F.3d at 77. To that end, the Circuit adopted the safe-harbor language endorsed by the Seventh Circuit in *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000), *to wit*:

> As of the date of this letter, you owe $_____ [the exact amount due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1-800-[phone number].

*Id.* Importantly though, the Circuit Court also instructed that a debt collector need not use "any particular disclaimer[, but that u]sing the language set forth in *Miller* will qualify for safe-harbor treatment . . . ," *id.*, and that while "it 'may be preferable' for a debt collector to 'advise[] the consumer of the specific rate of increase in the debt over time,' . . . [the *Avila* Court] expressly stopped short of requiring this degree of disclosure." *Timoshenko v. Mullooly, Jeffrey, Rooney & Flynn, LLP*, No. 17-cv-4472, 2018 WL 1582220, at *3 (E.D.N.Y. Mar. 30, 2018)(quoting *Avila*, 817 F.3d at 77).) Indeed, when faced with similar safe-harbor language as used in the subject

11

Collection Letters, *i.e.*, "Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater," Judge Spatt recently stated:

> *Avila* d[oes] not require a debt collector to state whether each of these additional charges, 'interest,' 'late charges,' and 'other fees,' were individually increasing. The safe harbor correctly states that any of these additional charges *may* increase over time. ***In order for the safe harbor language to be accurate, it is only necessary for one of the three components to change. As interest was accumulating on [plaintiff's] debt, the Letter's accuracy does not need to specify which of those components fluctuate nor does it require all three to do so.***
>    . . . the Second Circuit provided clear direction in *Avila*: "[u]sing the language set forth in *Miller* will qualify for safe-harbor treatment." *Avila*, 817 F.3d at 77. *See, e.g., Taubenfliegel v. EGS Fin. Care, Inc.*, No. 18-CV-1962-ARR-JO, 2018 WL 3079697, at *4 (E.D.N.Y. June 21, 2018). "To hold otherwise would upset the reliance interests of the many debt collectors who, taking the Second Circuit at its word, drafted collection letters based on that guidance." *Timoshenko*[], 2018 WL 1582220, at *4 []. When viewed from the perspective of the hypothetical "least sophisticated consumer," the Letter does not contain any false, deceptive, or misleading representations.

*Avila v. Reliant Capital Sols., LLC*, No. 18-cv-2718, 2018 WL 5982488, at *4-5 (Nov. 14, 2018) (bolded italicized emphasis added). Hence, Judge Spatt ruled the debt collector's letter did not violate § 1692e. *See id.* at *5; *see also Timoshenko*, 2018 WL 1582220, *2 ("We need not parse the Collection Letter in any great detail . . . because the *Avila* safe harbor plainly applies and is dispositive of this case."); *see also id.* at *3 (finding substantially similar safe-harbor language in collection letter did not violate §1692e); *Taubenfliegel*, 2018 WL 3079697 (same). Significantly, moreover, the Second Circuit has just affirmed that the *Kolbasyuk* collection letter, which contained the same safe-harbor language as in the *Avila* collection letter before Judge Spatt, did not violate § 1692e. *See Kolbasyuk v. Capital Mgmt. Servs., LP*, No. 18-1260-cv, slip op. at 11-12 (2d. Cir. Mar. 12, 2019) ("[W]e . . . reaffirm today what we said previously in *Avila*[, 817 F.3d at 77]: use of the *Miller* 'safe harbor' language immunizes a debt collector from

a Section 1692e claim predicated upon an alleged 'fail[ure] to disclose that the consumer's balance may increase due to interest and fees.'" (omitting citation)), *affirming Kolbasyuk*, No. 17-cv-7499, 2018 WL 1785489.

The same is true in the instant case; Defendant has included *Avila* safe-harbor language in the Collection Letters which is not misleading as it informs the Plaintiffs of their respective balances due the underlying creditor as of the dates of the Letters and that "[d]epending on your account agreement with the creditor, interest, late charges and other charges may continue to accrue on your account." (Rule 56.1 Counter, ¶8.) While the *Avila* Court 'indicated that it 'may be preferable' for a debt collector to 'advise[] the consumer of the specific rate of increase in the debt over time,' . . . it expressly stopped short of requiring this degree of disclosure." *Timoshenko*, 2018 WL 1582220, at *3 (rejecting plaintiff's argument "that any collection letter is deceptive, in violation of §1692e, if it fails to provide sufficient information regarding fees and interest for the consumer to determine her total outstanding debt 'at any given moment in the future'") (citing *Avila*, 817 F.3d at 77); *see also Kolbasyuk*, No. 18-1260-cv, slip op. at 13 (stating that where a debt collector provides the consumer "with the total, present quantity of his debt and informed him that this amount might increase due to additional fees and interest[, . . . the] failure to provide . . . additional detailed disclosures . . . does not transform [the debt collector]'s otherwise-straightforward letter into a 'false, deceptive, or misleading' one."). Thus, having considered the Collection Letters from the perspective of the LSC, which does not require the resolution of any disputed issues of fact, the Defendant is entitled to summary judgment as a matter of law on the Plaintiffs' claimed §1692e violation.

3. Plaintiff's § 1692g Claim

Plaintiffs concede that, in *Corwise v. FMS Investment Corp.*, No. 17-cv-6493, slip op. (E.D.N.Y. May 1, 2018), this Court already rejected the same heightened notice argument as

they currently advance here, *i.e.*, that *Carlin* requires more than the use of *Avila*-compliant safe-harbor language to avoid violating § 1692g. (*See* Opp'n at 12.) *See also Corwise*, slip op. at 8-9. Yet, the present Plaintiffs ask this Court to rely on, *inter alia*, *Balke*, 2017 WL 2634653, in extending *Carlin*'s ruling to the present Collection Letters (*see* Opp'n at 12, 14-15; *see also* Compl., ¶43). They also request that, despite doing so in *Corwise*, this Court not rely on *Timoshenko*, 2018 WL 1582220, and *Kolbasyuk*, 2018 WL 1785489, as persuasive decisions in determining whether the present Collection Letters comply with § 1692g. (*See id.*) In light of the Circuit Court's affirmance of *Kolbasyuk*, the Court declines that invitation. *See Kolbasyuk*, No. 18-1260-cv, slip op. at 7-10.

Even if that were not so, this Court would find it stands in good company in rejecting the Plaintiffs' *Carlin* expansion request as, in her recent § 1692g ruling in *Taubenfliegel,* which also relies on *Timoshenko* and *Kolbasyuk*, Judge Ross aptly stated:

> Plaintiff relies heavily on language in *Carlin* that states that a debt collection letter does not satisfy § 1692g when "it omits information allowing the least sophisticated consumer to determine the minimum amount she owes at the time of the notice, what she will need to pay to resolve the debt at any given moment in the future, and an explanation of any fees and interest that will cause the balance to increase." [852 F.3d] at 216. Taken in isolation, this language "misleadingly suggest[s] a requirement of exhaustive disclosure." *Timoshenko* [], 2018 WL 1582220, at *3 []. But, as other judges in this court have recognized, *Carlin* does not require every collection letter to "provide sufficient information regarding fees and interest for the consumer to determine [his] total outstanding debt 'at any given moment in the future.'" *Id.* "[S]uch a conclusion [would be] at odds with *Avila*" and the safe harbor it articulated. *Id.* Indeed, it would be at odds with *Carlin* itself, which reaffirmed that safe harbor. *See* 852 F.3d at 216-17. The problem in *Carlin* was that the "letter listed an estimated amount due." *Kolbasyuk* [], 2018 WL 1785489, at *2 []. As the *Kolbasyuk* court explained, "*Carlin* addresses what a letter needs to do when it does not state the minimum amount owed . . . . [It] does not add on additional requirements if the letter already states the minimum amount due, rather than an estimate." *Id.;* *Timoshenko*, 2018 WL 1582220, at *3. "To hold otherwise would

14

upset the reliance interests of the many debt collectors who, taking
the Second Circuit at its word, drafted collection letters based on
[*Avila*'s] guidance." *Timoshenko*, 2018 WL 1582220, at *4.

*Taubenfliegl*, 2018 WL 3079697, *3. Indeed, the Second Circuit "expressly rejected a requirement of exhaustive disclosure." *Id.* at *4 (citing *Taylor v. Fin'l Recovery Servs., Inc.*, 886 F.3d 212, 215 (2d Cir. 2018)); *see also Kolbasyuk*, No. 18-1260-cv, slip op. at 7-8. Thus, because the *Taubenfliegl* collection letter "qualifie[d] for the protection of *Avila*'s safe harbor," Judge Ross found it did not violate § 1692g.[5] *Id.*

The same is true here. The Collection Letters do not violate § 1692g since each one follows *Avila*'s formula of safe-harbor language by "list[ing] the actual amount due (rather than an estimated amount), stat[ing] that that amount may increase due to interest or other charges, and provid[ing] a way for [each Plaintiff] to contact the debt collector. That is all the FDCPA requires." *Id.; see also id.* at note 1 (noting that the use of the term "may" in safe harbor notification is "expressly permitted by *Avila*'s safe harbor, 817 F.3d at 77," and, therefore, declining to follow *Balke*, which "d[id] not address the existence of the safe harbor or its effect on the debt collection as issue there"[6]). Thus, having considered the Collection Letters from the perspective of the LSC, which does not require the resolution of any disputed issues of fact, the Defendant is entitled to summary judgment as a matter of law on the Plaintiffs' claimed §1692g violation.

---

[5] For the same reason, Judge Ross found the *Taubenfliegl* collection letter did not violate § 1692e. *See id.*
[6] Similarly, in *Timoshenko*, Judge Glasser stated "that the collection letters at issue in *Carlin* and *Balke* did not include the safe-harbor language set forth in *Miller* and endorsed in *Avila*," and, therefore, "neither . . . disturbs *Avila*'s clear guidance that "[u]sing the language set forth in *Miller* will qualify for safe-harbor treatment." *Timoshenko*, 2018 WL 1582220, at *3-4 (quoting *Avila*, 817 F.3d at 77).

* * *

The Court has considered the parties' remaining arguments and finds them to be without merit.

IV.     Conclusion

Accordingly, IT IS HEREBY ORDERED that:

(A)  Plaintiffs' Motion to Strike the Liederman Affidavit (*see* ECF No. 20) is denied as moot (*see* note 3);

(B)  Defendant's Summary Judgment Motion is GRANTED;

(C)  The Clerk of Court is directed to enter judgment in favor of Defendant and, thereafter, close this case; and

(D)  The April 17, 2019 Status Conference is marked off the Court's calendar.

SO ORDERED this 12th day of March 2019 at Central Islip, New York.

/s/ *Sandra J. Feuerstein*
Sandra J. Feuerstein
United States District Judge